# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

JOANN HURLEY, on behalf of herself
and all others similarly situated,

                        Plaintiffs,

v.                                            CIVIL ACTION NO. 3:16-9949

THOMAS MESSER, a W.Va. citizen,
SANDRA PERTEE, a W. Va. citizen,
WAYNE COUNTY BOARD OF EDUCATION,
a West Virginia Political Subdivision,
RINGCENTRAL, INC., a Delaware Corp.,
CALLCENTRIC, INC., a New York Corp.,
FIVERR, INC., a Delaware Corp., AND
VOICENT COMMUNICATIONS, INC.,
a California Corp.,

                        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Motions to Dismiss Plaintiff's Second Amended Complaint by Callcentric, Inc. (ECF NO. 73), RingCentral, Inc. (ECF No. 99), and Fiverr, Inc. ECF No. 89. In the Second Amended Complaint, Plaintiff Joann Hurley alleges that these Defendants violated the Telephone Consumer Protection Act ("TCPA") and the related federal regulations with respect to certain alleged improper political calls. Defendants Callcentric, RingCentral, and Fiverr argue Plaintiff's claims must be dismissed for a variety of reasons.[1] For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part,** the motions of Callcentric and RingCentral and **GRANTS** the motion of Fiverr.

---

[1] Defendant Voicent also filed a Motion to Dismiss. The Court will address Defendant Voicent's motion in a separate Memorandum Opinion and Order.

## I. Background

As more fully set forth in this Court's early Memorandum Opinion and Order entered on June 6, 2017 (ECF No. 34), this case involves certain prerecorded political robocalls that were made against Plaintiff in her bid to be re-elected to the Wayne County Board of Education (BoE). In the original Complaint filed on October 21, 2016, Plaintiff, on behalf of herself and all others similarly situated, alleged Defendants Thomas Messer and the BoE violated the TCPA and the Federal Communications Commission's regulations implementing the TCPA ("FCC Rules") by initiating these telephone calls. In the Memorandum Opinion and Order, the Court dismissed the BoE due to Plaintiff's failure to state a claim under either a theory of direct liability or vicarious liability, but it permitted Plaintiff to file an Amended Complaint and proceed against Defendant Messer. A corrected version of the Amended Complaint was filed on June 12, 2017. ECF No. 37.

Thereafter, the parties proceeded with discovery. In light of that discovery, Plaintiff filed a motion on October 10, 2017, seeking Leave to File Second Amended Complaint to add Sandra Pertee, the Superintendent of the BoE during the relevant time, to readd the BoE, and to add Callcentric, RingCentral, Fiverr, and Voicent Communications, Inc. as Defendants. ECF No. 50. The Court granted the motion on November 17, 2017. ECF No. 58. Thereafter, Defendants Callcentric, RingCentral, Fiverr, and Voicent all filed separate motions to dismiss. Defendants Callcentric and Fiverr argue the claims against it should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendant RingCentral argues the claims against it should be dismissed under both Rule 12(b)(6) and Rule 12(b)(1).

## II. Legal Standard

With respect to Rule 12(b)(6), the United States Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that courts must look for "plausibility" in the complaint. 550

U.S. at 557. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

With respect to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it can follow two tracks. Under the first track, a party asserts a "factual attack," claiming that the jurisdictional allegations made in the complaint are inaccurate. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Under the second track, a party asserts a "facial attack," claiming that the jurisdictional facts contained within the complaint, taken as true, fail to support a court's subject matter jurisdiction over the action. *See id.*; *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986). When considering a "facial attack," a court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (internal quotation marks and citation omitted). Defendant RingCentral has asserted a facial attack. Therefore, the Court will proceed under the Rule 12(b)(6) procedural framework.[2]

### III. Discussion

*A. Direct Liability*

In the Second Amended Complaint, Plaintiff alleges that all "Defendants initiated and made . . . illegal prerecorded messages from an automatic dialing system utilizing the Wayne County Schools master call list, which is maintained by defendants WVBOE, Thomas Messer and

---

[2]Although the parties have submitted documents outside the pleadings, the Court has not considered those documents in ruling on the present motions. Therefore, the Court will not convert these motions into ones for summary judgment.

Sandra Pertee[.]" *Second Am. Compl.,* at ¶ 21, in part. In addition, Plaintiff asserts "[D]efendants planned, created, caused, broadcasted and initiated thousands of illegal, misleading, defamatory and false prerecorded telephone messages regarding plaintiff Joann Hurley to be made to members of the prospective class." *Id.* at ¶ 33. Plaintiff further alleges that "Defendants' actions, conduct and omissions, in making and broadcasting the subject prerecorded messages/calls from an automatic telephone dialing system to cellular and paging services, directly violated" 47 U.S.C. § 227(b) of the TCPA (Count I) and 47 C.F.R. 64.1200(a) of the FCC Rules (Count II). *Id.* at ¶¶ 45, 49.

> Section 227(b) of the TCPA provides, in relevant part:
>
>> It shall be unlawful for any person . . . --
>>
>> (A) to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice—
>>
>> \*   \*   \*
>>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]"

47 U.S.C. § 227(b)(3), in part. Similarly, 47 C.F.R. § 64.1200(a) provides, in part:

> No person or entity may:
>
> (1) . . . initiate any telephone call . . . using an automatic telephone dialing system or an artificial or prerecorded voice;
> \*   \*   \*
>
> (iii) To any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

47 C.F.R. § 64.1200(a)(1)(iii). In *In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013), the FCC recognized that neither the statute nor the rules define the term "initiate." 28 FCC Rcd. at 6583,

¶ 26. In delineating the term, the FCC concluded "a person or entity 'initiate[s]' a telephone call" by taking "the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id*.

In a subsequent ruling, the FCC further stated initiating a telephone call can mean either the person or entity that "take[s] the steps necessary to physically place a telephone call" or that is "so involved in the placing of a specific telephone call as to be deemed to have initiated it." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015) ("Omnibus Order") (internal quotation marks and citations omitted). The FCC explained it will

> look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA.

*Id*. (citation omitted). With respect to the second prong for those that offer calling platform services for others to use, the FCC stated it also will consider as a factor whether they "knowingly allowed [their] client(s) to use that platform for unlawful purposes[.]" *Id*. (citation omitted).

In its motion, Defendant Fiverr argues it cannot be held liable under either the TCPA or the FCC Rules because the Second Amended Complaint is devoid of any factual allegations that it made or initiated the calls as contemplated therein. In the Second Amended Complaint, Plaintiff only mentions Defendant Fiverr by name in two paragraphs. Specifically, Plaintiff alleges that Defendant Fiverr "is a Delaware corporation with its principal place of business in New York, New York. At all times relevant hereto, defendant Fiverr, through its actors, did the voiceovers for the subject messages." *Second Am. Compl.*, at ¶ 7. Additionally, Plaintiff alleges:

> Defendant Messer also hired/retained voice actors from defendant Fiverr, who would read the prepared script for the subject prerecorded message. Defendant Fiverr directly participated in, had knowledge and the right to control the illegal conduct alleged herein, as the "voice" of the subject prerecorded message. As the "voice", defendant Fiverr would have direct knowledge that the subject prerecorded messages were in violation of the TCPA.

*Id.* at ¶ 30.

Upon review, the Court finds that, even if true, these allegations are insufficient to show Defendant Fiverr initiated the telephone calls as contemplated by the statute or the FCC Rules. First, there are simply no facts suggesting that Defendant Fiverr physically placed the telephone calls at issue. Second, the Court finds that the facts alleged also are insufficient to support an argument that Defendant Fiverr was so involved in placing the calls that it could be deemed to have initiated them. Plaintiff's factual allegations against Defendant Fiverr is that Defendant Messer "hired/retained voice actors from defendant Fiverr, who would read the prepared script for the prerecorded message." *Id.* By virtue of being the voice, Plaintiff claims Defendant Fiverr "directly participated in, had knowledge and the right to control the illegal conduct alleged[.]" *Id.*

However, providing an actor to read the content of an illegal message is not the equivalent of being "so involved in *the placing* of a specific telephone call as to be deemed *to have initiated it*." *Omnibus Order*, 30 FCC Rcd. at 7980, ¶ 30 (italics added).[3] Additionally, there are no allegations that Defendant Fiverr contributed to the content, timing, or manner the calls were made. Simply put, although Plaintiff has alleged facts suggesting Defendant Fiverr had some role in the recording of the content of the message, and creating the message was part of the chain of events before the call was made, there is nothing supporting a claim Defendant Fiverr was involved in

---

[3]Defendant Fiverr denies the actors are its affiliates or employees. *Mem. in Supp. of Def. Fiverr's Mot. to Dismiss*, ECF No. 74, at 11.

initiating or placing the call. With respect to Defendant Fiverr, Plaintiff's allegation that "Defendants initiated and made these illegal prerecorded messages from an automated dialing system," *Second Am. Compl.*, at ¶ 21, and that "[D]efendants planned, created, broadcasted and initiated" the telephone calls, *Id*. at ¶ 33, are merely legal conclusions that are unsupported by any factual allegations. Therefore, under *Iqbal* and *Twombly*, the Court finds Counts I and II against Defendant Fiverr must be dismissed.

Perhaps realizing her claims against Defendant Fiverr stand on shaky grounds, Plaintiff asks this Court to allow her to conduct discovery on those claims if the Court finds her pleadings insufficient. However, allowing discovery where Plaintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*. Therefore, the Court denies Plaintiff's request.

Turning to the claims of direct liability in Counts I and II against Defendants Callcentric and RingCentral, the Court reaches a different result. Plaintiff alleges Callcentric and RingCentral are companies that provide Voice-Over-Internet-Protocol (VoIP) services. *Second Am. Compl.,* at ¶¶ 5, 6. Plaintiff claims she received the telephone calls at issue from the phone numbers 877-205-4603 and 631-542-1867, which she eventually learned were the numbers of RingCentral and Callcentric. *Id*. at ¶¶ 11, 14. Plaintiff also learned that similar prerecorded messages were being sent and autodialed to the cellular phones and paging services of members of the community. *Id.* at ¶¶ 15, 20. In addition, Plaintiff alleges that:

> RingCentral and Callcentric were hired/retained, and both knowingly provided defendants Messer, Pertee and the WCBOE an avenue and means, through a direct telephone number, to broadcast the subject illegal prerecorded messages to members of the class. Defendants RingCentral and Callcentric have direct knowledge of and the right of control over the illegal conduct alleged herein, as the subject of the prerecorded messages and robocalls were broadcasted by defendants RingCentral and Callcentric themselves

> through their own assigned telephone numbers . . ., and both
> defendants maintain records of the subject robocalls being initiated.

*Id*. at ¶ 28, in part.

As with Defendant Fiverr, Defendants RingCentral and Callcentric both argue that they cannot be directly liable under the TCPA or the FCC Rules because they did not "initiate" or make the subject calls. Instead, they assert they are nothing but "passive conduit[s]." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, ECF No. 100, at 2; *see Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, ECF No. 74, at 9. However, unlike Fiverr, Plaintiff claims Callcentric and RingCentral are the VoIP providers and, thus, offered a calling platform for others to use. Additionally, Plaintiff alleges these Defendants knew about the illegal conduct, had a right to control the conduct but, nevertheless, permitted the robocalls to be broadcast through their assigned telephone numbers. Although Callcentric and RingCentral insist they were just a conduit, the Court finds these allegations, at the very least, are sufficient to state a plausible claim that Callcentric and RingCentral offered a calling platform and "knowingly allowed its client(s) to use that platform for unlawful purposes[.]" *Omnibus Order*, 30 FCC Rcd. at 7980, ¶ 30 (citation omitted). Therefore, the Court denies Callcentric and RingCentral's argument.

## B. Standing

In its motion to dismiss, Defendant RingCentral also argues that Plaintiff lacks standing to assert the above claims because Plaintiff "fails to establish that [she] suffered a concrete injury-in-fact that is fairly traceable to RingCentral's alleged conduct." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 15. The Court disagrees.

To bring any action in federal court, a plaintiff must have standing—that is, a plaintiff must have a sufficient personal stake in the outcome of the matter being litigated to make it justiciable under Article III of the Constitution. *See Friends of the Earth, Inc. v. Gaston Copper Recycling*

*Corp.*, 204 F.3d 149, 153 (4th Cir. 2000); *see also* U.S. Const. art. III (restricting federal courts to adjudicating "cases" and "controversies"). In order to satisfy the minimum constitutional requirements for standing, an individual plaintiff must demonstrate:

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendant RingCentral first argues that Plaintiff does not have standing because she has not and cannot allege the first requirement of standing: an injury in fact. *See Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 16. However, Supreme Court precedent clearly holds that, when a private cause of action is asserted under the TCPA, the constitutional requirement of an injury in fact is met. *See Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 370–72 (2012) (holding that a federal district court has jurisdiction to hear a private right of action brought pursuant to the TCPA).

Second, Defendant RingCentral argues that Plaintiff does not have standing because she cannot assert that her injury was *caused* by RingCentral. *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 18. However, this argument is actually no different from the above argument that RingCentral did not "initiate" the calls under the TCPA. In fact, as support for the proposition that Plaintiff does not have standing, Defendant RingCentral implicitly admits it is a repetitive issue when it states "Plaintiff [arguably] concedes in her [Second Amended Complaint] that Defendant Messer . . . *initiated* the calls; not RingCentral." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 19 (emphasis added). Thus, for the same reasons why the Court finds Plaintiff

sufficiently pled that RingCentral "initiated" the telephone calls, the Court finds that Plaintiff's injury can be said to be caused by RingCentral, and standing is met.

*c. Residential Phone Numbers*

Finally, Defendants RingCentral and Callcentric both argue that because the FCC "has created an exemption for non-commercial robocalls made to residential telephone" numbers, the Court should "dismiss Plaintiff's TCPA claims relating to residential telephones." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 19-20; *see Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, at 17-18. However, despite mention that some of the telephone calls were made to landlines, the Second Amended Complaint, as Plaintiff points out, does not actually assert any specific claim related to calls made to landlines. *See Mem. in Opp. to Def. RingCentral's Mot. to Dismiss*, ECF No. 105, at 19; *Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, at 18. Thus, Defendants' argument is moot.

*d. Vicarious Liability*

Turning to Count III, Plaintiff alleges liability under a theory of vicarious liability. *Second Am. Compl.*, at ¶¶ 50–54. Claims of vicarious liability exist under the TCPA and arise under federal common-law principles of agency. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016), *as revised* (Feb. 9, 2016) (citing *In re Dish Network*). The FCC identified three types of relationships giving rise to vicarious liability under the TCPA: classic agency relationships, apparent authority, and ratification. *In re Dish Network,* 28 FCC Rcd. at 6586-87, ¶ 34.

"Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.'" *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) (quoting 1 Restatement (Third) of Agency § 1.01, Comment *f* (Am. Law Inst. 2005)). "Vicarious liability, however, does not require proof of a formal agency relationship;

instead, a plaintiff may use principles of apparent authority and ratification to establish such liability." *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476, at *6 (N.D. W. Va. Jan. 28, 2014) (citing *In re Dish Network,* 28 F.C.C. Rcd. at 6584).

Generally, to establish apparent authority, a plaintiff must show some representation or permission by the alleged principal to be represented by the alleged agent, and that there was some reliance by the plaintiff on the actions of the alleged agent. *See Hawkspere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225, 235–36 (4th Cir. 2003); *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166 (4th Cir. 1988) (applying North Carolina law). With regard to ratification, "a [principal] would be responsible under the TCPA for the unauthorized conduct of a[n alleged agent] that is otherwise authorized to market on the [alleged principal's] behalf if the [principal] knew (or reasonably should have known) that the [agent] was violating the TCPA on the [principal's] behalf and the [principal] failed to take effective steps within its power to force the [agent] to cease that conduct." *In re Dish Network,* 28 F.C.C. Rcd. at 6592, ¶ 46 (footnote omitted).

In relevant portions, Plaintiff identifies Callcentric, RingCentral, and Fiverr as having the "right to exercise, control over defendant Messer," and further allege that Defendant Messer was their "agent." *Second Am.Compl.*, at ¶¶ 51–52. Plaintiff also generally alleges Callcentric, RingCentral, and Fiverr held Defendant Messer out "as their agent" and "ratified" Defendant Messer's actions. *Id.* at ¶¶ 53–54. Beyond these conclusory statements, Plaintiff has not alleged a single fact, disputed or otherwise, identifying how Callcentric, RingCentral, and Fiverr exerted any control or authority over Defendant Messer. Nor has Plaintiff identified any actions Defendant Messer performed at their behest. In fact, the Complaint cuts in the other direction, alleging Defendant Messer "hired/retained" Callcentric, RingCentral, and Fiverr. *Id.* at ¶¶ 28, 30.

Furthermore, the Second Amended Complaint does not indicate any facts where agency may have been established by apparent authority or ratification, as there are no statements indicating any reliance on Callcentric, RingCentral, and Fiverr based on the actions of Defendant Messer. Even construing liberally, the closest Plaintiff comes to alleging non-formal agency leads to a non-sensical hodgepodge of facts. Plaintiff claims, through some sort of temporal and logical loop, that Callcentric, RingCentral, and Fiverr had authorized Defendant Messer's behavior and failed to cease his conduct. Plaintiff implies that before Callcentric, RingCentral, and Fiverr ever met Defendant Messer, they directed him to hire them, thus making the man who "hired" them their agent. However, as stated, Plaintiff has made no more than conclusory allegations and failed to allege a claim for vicarious liability. Therefore, the Court dismisses Count III against Callcentric, RingCentral, and Fiverr.

### IV. Conclusion

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant Fiverr's Motion to Dismiss, and **GRANTS, in part,** and **DENIES, in part,** Defendants Callcentric and RingCentral's Motions to Dismiss. Specifically, the Court **DISMISSES** Count III against Defendants Callcentric and RingCentral, but not Counts I and II.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 4, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE